**Mark LAMBERT, Appellant,**

v.

**WILL BROTHERS COMPANY, INC., Appellee,**

**Associated Indemnity Corporation, Intervenor-Appellant.**

**No. 78–1365.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1978.

Decided April 23, 1979.

Silas H. Brewer, Jr. of Kaplan, Brewer, Bilheimer & Marks, Little Rock, Ark. (argued), and Chester Lowe of Lowe & Hamilin, Little Rock, Ark., on brief, for appellant.

Joseph E. Kilpatrick, Jr. of Friday, Eldredge & Clark, Little Rock, Ark., argued, for appellee.

Before LAY and HEANEY, Circuit Judges, and HANSON,* Senior District Judge.

LAY, Circuit Judge.

Mark Lambert brought this diversity suit against Will Brothers Co. to recover damages for personal injuries suffered by Lambert during the course of his employment when using a hydraulic trim press manufactured by the defendant Will Brothers. The case was submitted to a jury on both negligence and strict liability under Arkansas law and the jury returned a general verdict against the plaintiff. This appeal followed. The plaintiff urges that the trial court erred in giving instructions on assumption of risk and independent intervening cause. We find the court erred in submitting the issue of assumption of risk to the jury and reverse and remand the case for a new trial on that basis.

Will Brothers sold the hydraulic trim press in May of 1965 to the Michigan Division of Hoover Ballbearing Co., the parent company of Glenvale Products Co., plaintiff's employer. The press, which is used to fabricate and trim die castings, is activated by depressing two palm control buttons located on the front of a stationary platform at a level slightly below the waistline of a person standing in front of the machine. There are separate buttons to start and stop the electric motor which provides power to

---

* The Honorable William C. Hanson, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

the hydraulic system of the press. A red light located just above the start and stop buttons glows when the electrical power system of the press is turned on. When the press was sold in 1965 it did not have ring guards around the palm control buttons. Sometime after Glenvale Products obtained the press it attached ring guards around the palm control buttons. At the time of plaintiff's injury, however, the ring guard around the right palm control button was missing. Glenvale Products also added a safety jack to the press which would prevent its operation when in place. This safety jack was not working at the time of the accident.

Approximately three months after his employment with Glenvale Products plaintiff was assigned the job of changing dies on the trim presses. Lambert had received approximately two weeks training and had worked three or four months on mechanical trim presses prior to the injury. The particular injury occurred on the first day that the plaintiff had worked on a hydraulic press. Plaintiff's supervisor testified that Lambert and a swing man changed the die on a trim press at the beginning of the shift. The injury occurred when Lambert was changing a die on the trim press near the end of his scheduled work shift. The evidence showed that he had positioned a mobile work table at a right angle to the front of the trim press, his intention being to place the die on the table once he removed it from the machine. Lambert then lowered the upper portion of the press to a closed position. Lambert testified that he then turned off the electrical power, loosened the bolts securing the two die sections to the upper and lower platens, turned the power on and then raised the upper platen to its highest or open position. He testified that he then turned off the power, although he acknowledged that he unknowingly may have pressed the wrong button. In any event when he attempted to remove the die, the upper platen suddenly descended, crushing his right hand. An inspection immediately after the injury revealed that the electrical power to the machine was on, that a corner of the mobile work table had pene-

trated the ring guard around the left palm control button and that the safety jack attached to the right side of the press was not operable. As previously mentioned the ring guard around the right palm control button was missing.

Based on the above evidence plaintiff's expert testified that in his opinion the injury occurred when plaintiff failed to turn off the electrical power and activated the machine by inadvertently engaging the unguarded right palm control button, a corner of the mobile work table having penetrated the left ring guard and engaged the left palm control button. The expert testified that at the time it was sold the machine was defectively designed in that it did not have ring guards around the palm control buttons, a safety jack and improperly designed buttons which turned the machine's electrical power on and off.

*The Challenged Instructions.*

Plaintiff challenges the instructions on assumption of risk and independent intervening cause. The assumption of risk instruction reads:

> Furthermore, in this case, Will Brothers contends that Mark Lambert assumed the risk of his own injuries. To establish that defense, Will Brothers, Inc., has the burden of proving each of the following propositions: First, that a dangerous situation existed which was inconsistent with the safety of Mark Lambert. Second, that Mark Lambert knew the dangerous situation existed and realized the risk of damage from it. In determining whether Mark Lambert knew of the dangerous situation and realized the risk of damage from it, you may take into consideration whether the danger was obvious.

> The third element to be proved, that Mark Lambert voluntarily exposed himself to the dangerous situation which proximately caused his claimed damages.

The independent intervening cause instruction reads:

If, following any event or omission of a party, an event intervened which in itself caused any damage, completely independent of the conduct of that party, then his act or omission was not a proximate cause of the damage.

Plaintiff urges on appeal that there was no evidence in the record to support either instruction.

*Assumption of Risk.*

 In Arkansas [a]ssumption of risk occurs only when the injured person actually knows and appreciates the danger. The standard is a subjective one, being based upon what the particular person in fact sees, knows, understands, and appreciates. *McDonald v. Hickman,* 252 Ark. 300, 478 S.W.2d 753 (1972).

*Price v. Daugherty,* 253 Ark. 421, 486 S.W.2d 528, 529 (1972).

In *McDonald v. Hickman,* 252 Ark. 300, 478 S.W.2d 753 (1972), the Arkansas Supreme Court observed:

Assumption of risk, a harsh doctrine, depends upon actual knowledge and appreciation of the danger. As Prosser puts it: " 'Knowledge of the risk is the watchword of assumption of risk.' Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself." Prosser on Torts, § 68 (4th ed., 1971). See also the Restatement of Torts (2d), § 496 D (1965), where it is stated: "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence."

*Id.* at 302, 478 S.W.2d at 754–55.

*See generally* H. Woods, Comparative Fault § 6.5 (1978).

Applying the above standard plaintiff argues there must be evidence from which the jury could conclude:

[T]hat plaintiff, as he attempted to remove the die from the press, was *actually* aware (1) that the electrical power to the press was on, (2) that the corner of his work table had penetrated the left ring guard, making contact with the left palm control button, (3) that there was a safety jack on the press for use in changing dies, and (4) that the ring guard around the right palm control was missing.

 The defendant initially urges that plaintiff need only understand and appreciate the general nature of the risk of changing the dies and, since Lambert was an experienced die setter, the submission of assumption of risk to the jury was fully warranted. If this contention were true it would alter the subjective standard of assumption of risk under Arkansas law. The mere operation of dangerous machinery which may cause injury when the operator fails to use reasonable care does not invoke the doctrine of assumption of risk. The doctrine requires that the risk assumed be specifically known, understood and appreciated. *See Price v. Daugherty, supra; McDonald v. Hickman, supra; see also Rhoads v. Service Machine Co.,* 329 F.Supp. 367, 378–79 (E.D.Ark.1971). The doctrine of assumption of risk was not designed to bar recovery simply because there exists a general risk of injury through accidental misuse. The specific danger must be known and the plaintiff with such knowledge must voluntarily expose him or herself to it.

 A more serious argument proffered by the defendant is that there existed sufficient evidence from which the jury could have concluded that the plaintiff was fully aware of an obvious danger and the faulty design of the machine. In *Harris v. Hercules, Inc.,* 455 F.2d 267 (8th Cir. 1972), this court held that the trial court properly submitted assumption of risk to the jury where the plaintiff, who was working with a crane near a high voltage line, "knew and appreciated that the high voltage line was in the area in which the crane was working and that it was dangerous to allow the crane to come into contact with it." *Id.* at 269. This court rejected plaintiff's contention

that it was also necessary for him to know that the crane had been moved so close to the line that the potential risk had become an immediate and imminent danger. *See Woodruff Electric Cooperative Corp. v. Daniel,* 251 Ark. 468, 472 S.W.2d 919, 923 (1971). The *Harris* case is an application of the doctrine that a "plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him." W. Prosser, Law of Torts § 68, at 448 (1971). *Accord, Gilbertson v. Tryco Manufacturing Co.,* 492 F.2d 958, 962 (8th Cir. 1974) ("The situation . . . is no different than a person voluntarily walking across a rifle range during target practice and then claiming he did not know of the projection of the specific bullet that hit him.").

We find the present facts, however, clearly distinguishable and conclude that it was error for the trial court to instruct on assumption of risk. Here there was only evidence of a possible risk from which an injury might conceivably occur rather than evidence that plaintiff knew and appreciated the actual danger which caused his injury. It would appear that Lambert knew, or at least should have known, that the power to the machine was not turned off. If he failed to exercise sufficient caution to turn it off, he was guilty of negligence. This evidence does not, however, alter the fact that Lambert believed the power to be turned off. *Cf. Gilbertson, supra.* Without knowledge that the power was left on it is impossible to say that plaintiff knowingly appreciated the risk and voluntarily chose to undertake it.

Defendant argues that the jury could disbelieve Lambert's statement about turning off the power. Defendant contends it was obvious from the warning light that the power was still on when he removed the die. It is further urged that Lambert was fully aware the right ring guard was missing and therefore the risk was obvious that a person working near the right control button might accidentally engage it. *Cf. Rhoads v. Service Machine Co.,* 329 F.Supp. at 379. Assuming the above facts to be true, there is no evidence that plaintiff had the necessary knowledge that the press would activate. The evidence is undisputed that Lambert knew for the press to be activated that both the left palm control button *and* the right palm control button had to be engaged at the same time. Unless Lambert had the specific knowledge that the left control button was actually engaged, he had a right to assume, even with the power on, that if he accidentally engaged only the right palm control button the platens would not close on his hand.

A similar factual situation appears in *Lambertson v. Cincinnati Corp.,* 257 N.W.2d 679 (Minn.1977). There

> plaintiff was assisting a coemployee in the operation of the press brake. The coemployee was controlling the foot pedal, and plaintiff was placing long metal strips between the ram and the bed and removing them after they had been bent. As the ram was being raised after one cycle, a piece of metal which had been bent fell to the side of the bed opposite to the side where plaintiff was working. Plaintiff reached through the jaws of the machine to retrieve the piece of metal, but his coemployee had kept his foot on the pedal, thus permitting the ram to descend again, crushing plaintiff's arm between the ram and the bed.

*Id.* at 682.

In rejecting the manufacturer's claim that the trial court erred in failing to instruct the jury on assumption of risk the court wrote:

> The employee testified that he did not know that his coemployee's foot was still on the pedal and that he did not know that the machine could double cycle without stopping. While the employee did exclaim in the moments immediately following his injury that he should not have reached through the machine, the manufacturer points to no evidence that would permit a jury to infer that he was fully aware of how the machine operated and yet tried to reach in and out fast enough to avoid the ram.

*Id.* at 683.

The same reasoning applies here. The defendant points to no evidence that would

permit the jury to infer that plaintiff knew the work table had penetrated the left ring guard and that the machine was in a position to be activated by engaging the right palm control button. Absent evidence that the plaintiff was aware of the specific danger, it was error for the trial court to submit to the jury the defense of assumption of risk.

Perhaps Lambert as a reasonable, prudent person should have exercised more caution concerning the electrical power and inspected the location of the mobile work table in relation to the left palm control button. His failure to do so, however, relates only to the issue of his contributory negligence and comparative fault and does not constitute evidence which would support a complete bar to his recovery under the doctrine of assumption of risk.[1] *Capps v. McCarley & Co.*, 260 Ark. 839, 544 S.W.2d 850 (1977); *Price v. Daugherty, supra; McDonald v. Hickman, supra.*

In view of the necessity for a new trial it is unnecessary to pass on the court's abbreviated instruction on intervening cause. Assuming the evidence warrants the giving of an instruction on independent intervening cause,[2] we feel it should be enlarged to inform the jury that an independent intervening cause is one not fore-

seeable to the original tortfeasor. *Price v. Daugherty, supra.*

The judgment of the district court is reversed and remanded for a new trial.

---

1. Under the new Arkansas Model Jury Instruction 612, the Arkansas assumption of risk instruction reads:

 ASSUMPTION OF RISK—
 GENERAL

 _____ contends that _____ assumed the risk of his own (injuries) (damages). To establish that defense, _____ has the burden of proving each of the following propositions:

 First: That a dangerous situation existed which was inconsistent with the safety of (_____) (and) (_____'s property).

 Second: That _____ knew the dangerous situation existed and realized the risk of (injury) (damage) from it. (In determining whether _____ knew of the dangerous situation and realized the risk of (injury) (damage) from it you may take into consideration whether the danger was (open and) (obvious.)

 Third: That _____ voluntarily exposed himself to the dangerous situation which proximately caused his claim (injuries) (damages).

2. We seriously question whether the instruction should have been given under the circumstances of this case. The general principle governing intervening cause is well set forth by Professor Prosser.

 Obviously the defendant cannot be relieved from liability by the fact that the risk, or a substantial and important part of the risk, to which he has subjected the plaintiff has indeed come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility.

 Prosser, *supra,* § 44, at 273.

 *See Dulin v. Circle F Industries, Inc.,* 558 F.2d 456, 467 (8th Cir. 1977); *Cowart v. Casey Jones, Contractor, Inc.,* 250 Ark. 881, 467 S.W.2d 710 (1971).